# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ARMAMENT SERVICES INT'L, INC., MAURA ELLEN KELERCHIAN** <br> v. <br><br> **SALLY Q. YATES,** Acting Attorney General of the United States, **THOMAS E. BRANDON**, Deputy Director of the Bureau of Alcohol, Tobacco, Firearms and Explosives, **JUAN F. ORELLANA**, Director of Industry Operations Bureau of Alcohol, Tobacco, Firearms and Explosives, **UNITED STATES OF AMERICA** | **CIVIL ACTION** <br><br> **NO. 17-mc-10** |

Baylson, J.                                                                                      November 27, 2017

## MEMORANDUM RE: RESPONDENTS' MOTION FOR SUMMARY JUDGMENT

Petitioners, Armament Services International, Incorporated ("ASI") and Maura Ellen Kelerchian ("Mrs. Kelerchian"), seek Judicial Review of Respondent's, Alcohol, Tobacco, Firearms and Explosives' ("ATF"), December 1, 2016 Final Notices of Denial of Application of Firearms License for both ASI and Mrs. Kelerchian. For the reasons discussed below, Respondents' Motion for Summary Judgment (ECF 13) is granted, and the Petition will be dismissed.

### I. Factual and Procedural Background

The following facts are either undisputed or construed in the light most favorable to Petitioners and are based primarily on documents in the administrative record and Petitioners' Petition. In 2001 and 2002 ASI obtained three Federal Firearms Licenses ("FFL") for premises at 103 Camars Drive, Warminster, Pennsylvania: (1) an FFL Type 07 – Manufacturer of firearms other than destructive devices license, which was renewed every three years; (2) an FFL Type 08 – Importer of firearms other than destructive devices license, which was renewed every three

years; (3) an FFL Type 10 - Manufacturer of destructive devices license. (ECF 1, Petition ¶¶ 5–6). Since 2002, both Vahan Kelerchian ("Mr. Kelerchian") and Mrs. Kelerchian were identified as "responsible persons" for ASI's Licenses.[1] (Id. ¶ 6).

On May 17, 2013, a Grand Jury for the Northern District of Indiana indicted Mr. Kelerchian on multiple GCA violations from 2008 to 2010. The indictment included charges for providing and conspiring to provide false information to a Federal firearms licensee in violation of 18 U.S.C. §§ 371 and 924(a)(1)(A); and making and conspiring to make false representations to obtain machineguns for ASI under false pretense in violation of 18 U.S.C. §§ 371 and 1001. (Administrative Record at 0594–619); See also (Pet. ¶ 14). The court described the indictment against Mr. Kelerchian:

> The Indictment allege[d] that Mr. Kelerchian and his co-conspirators fraudulently represented to ATF and other federal firearms licensees that the machine guns were for the Lake County Sheriff's Department. To back up these claims, they used the Lake County Sheriff's Department letterhead, fabricated Lake County Sheriff's Department purchase orders, and issued false letters in the name of the Sheriff's Department. The machine guns were shipped to the Sheriff's department but taken by the co-conspirators to their homes. There they removed the barrels and sold them. Some of the barrels were sent to Mr. Kelerchian. On the basis of these allegations, the Grand Jury charged Mr. Kelerchian with conspiracy to provide false information to other federal firearms licensees in violation of 18 U.S.C. §§ 371 and 924(a)(1)(A).
>
> Mr. Kelerchian's conduct is analogous to a straw purchaser of firearms, except that the roles of the characters are reversed. Whereas the straw purchaser claims to be buying firearms for himself, the conspiracy here was to claim that the firearms were bought for someone else, that is, the Sheriff's Department.

United States v. Kelerchian, No. 2:13-CR-66 JVB, 2015 U.S. Dist. LEXIS 80336, at *2, 4-5 (N.D. Ind. June 22, 2015). No charges were brought against ASI or Mrs. Kelerchian, but the individual sheriff's officers from the Lake County Sherriff's Department who were charged

---

[1] A responsible person is defined as "any individual possessing, directly or indirectly, the power to direct or cause the direction of the management, policies, and practices of [a] corporation, partnership, or association, insofar as they pertain to firearms." See 18 U.S.C. § 923(d)(1)(B).

2

along with Mr. Kelerchian pleaded guilty. Only Mr. Kelerchian went to trial and on October 20, 2015, he was convicted of the GCA violations. (Rec. at 0594–619, 0620–28).

On June 4, 2013, after Mr. Kelerchian was indicted, Mrs. Kelerchian informed ATF that Mr. Kelerchian was no longer a responsible person for ASI. (Rec. at 0588); see also (Pet. ¶ 15). Mrs. Kelerchian remained as a responsible person and assumed the role of President. On August 13, 2013, Mrs. Kelerchian submitted an FFL Renewal Application for the Type 07 – Manufacturer of firearms other than destructive devices license, and Type 08 – Importer of firearms other than destructive devices, on behalf of ASI. On July 22, 2014, Mrs. Kelerchian submitted an FFL Renewal Application for the Type 10 – Manufacturer of destructive devices license on behalf of ASI. (Rec. at 3342–46, 0583–84). ATF did not approve or deny the renewal applications for ASI, but ATF did formally issue letters of authorization permitting ASI to continue operations for a period of over three years as the manufacturer of firearms other than destructive devices, and as an importer of firearms other than destructive devices; and for a period of over two years as the manufacturer of destructive devices.[2] On October 19, 2015, Mrs. Kelerchian applied for her own License as a dealer in firearms for the ASI premises and inventory. (Pet. ¶¶ 6, 19).

In December, 2015, ATF, through Industry Operations Investigator Philip Perkins ("IOI Perkins"), began investigating ASI's applications. IOI Perkins interviewed Mrs. Kelerchian and obtained documents relating to the criminal action against Mr. Kelerchian. (Rec. at 0181). On April 14, 2016, ATF denied Petitioners' application based on the findings of the investigation. (Rec. at 0441–55, 0466–80, 0492–506, 0518–32); See also (Pet. ¶¶ 21-22.). By letter dated April 25, 2016, Petitioners made timely requests for a hearing to review the denials. (Rec. at 0550–

---

[2] See copy of the Letters of Authorization attached as Exhibit A to Petitioners' Brief in Opposition to Respondents' Motion for Summary Judgment

58). Petitioners' letter also included a demand for discovery asking for all documents, including a list of witnesses to be called at the hearing. (Rec. at 0551). On June 3, 2016, ATF issued superseding notices to both ASI and Mrs. Kelerchian denying the license applications, and acknowledging Petitioners' requests for a hearing on the original Notices as extending to the Superseding Notices. (Rec. at 0429-549).

On September 21, 2016 ATF convened a hearing to review the application denials at ATF's Lansdale Area Office with ATF Hearing Officer Deborah Rankin presiding over the proceedings. (Rec. at 0132). Prior to ATF presenting its case, Attorney Prince made a number of objections that the Hearing Officer did not rule on, including most of the claims brought in the present case. (Rec. at 0162–66). ATF's only witness was IOI Perkins. Neither ASI nor Mrs. Kelerchian testified or had any witnesses testify on their behalf. (Rec. at 0171); See also (Pet. ¶ 36).

After considering the evidence and argument presented at the hearing, ATF, through the Director of Industry Operations for ATF's Philadelphia Field Division, confirmed the conclusion that Petitioners had willfully violated the GCA. ATF found, among other things:

> Between on or about November 2008 and on or about January 2010, in the Eastern District of Pennsylvania, the Northern District of Indiana and elsewhere, ASI willfully violated the Gun Control Act by conspiring with Vahan Kelerchian, Joseph Kumstar, and Ronald Slusser to make false statements and representations with respect to information required by the Gun Control Act to be kept in the records of Heckler & Koch, a Federal firearms licensee, in willful violation of 18 U.S.C. §§ 371 and 924(a)(1)(A).

> Maura Kelerchian willfully violated the Gun Control Act and regulations by aiding and abetting this conspiracy between Vahan Kelerchian, Joseph Kumstar, Ronald Slusser, and ASI to make false statements and representations with respect to information required by the Gun Control Act to be kept in the records of Heckler & Koch, a Federal firearms licensee, in willful violation of 18 U.S.C. §§ 2, 371, and 924(a)(1)(A). Maura Kelerchian participated in the conspiracy as something she wished to bring about. Maura Kelerchian associated herself with the conspiracy knowingly and willfully. Maura Kelerchian sought by her actions to make the conspiracy succeed.

4

> On or about the dates stated below, ASI willfully violated the Gun Control Act by possessing machineguns in willful violation of 18 U.S.C. § 922(o).
>
> Maura Kelerchian willfully violated the Gun Control Act and regulations by aiding and abetting ASI to possess these machineguns in violation of 18 U.S.C. § 922(o).

(Rec. at 0002-110). On December 11, 2016, Petitioners' counsel requested a stay of the effective dates of the final denials pursuant to 27 C.F.R. § 478.78, so that ASI could continue licensed operations during the pendency of a judicial review of the denials. (Pet. ¶¶ 53–54). On December 16, 2016, ATF granted Petitioners' requested stay, and postponed the effective dates of the denials of their applications pending the outcome of judicial review. (Rec. at 3394); See also (Pet. ¶ 55). On January 30, 2017, Petitioners filed their petition asking that this Court review ATF's denials of their applications pursuant to 18 U.S.C. § 923(f)(3). (ECF 1, Petition).

After the Petition was filed, Petitioners moved to stay the proceedings so they could engage in discovery. The Court denied this Motion, and ordered Petitioners to respond to the Government's Motion for Summary Judgment with permission to make any arguments concerning discovery in their response. (ECF 24).

## II. Legal Standard

Rule 56(a) of the Federal Rules of Civil Procedure provides as follows: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion." For purposes of Rule 56, a fact is material if proof of its existence or nonexistence might affect the outcome of the suit under the applicable substantive law. Haybarger v. Laurence Cnty. Adult Prob. & Parole, 667 F.3d 408, 412 (3d Cir. 2012) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). For an issue to be genuine, "all that is required is that sufficient evidence supporting the claimed factual

5

dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." Id. (quoting Anderson, 477 U.S. at 248–49). The initial burden is on the moving party to show that there exists an absence of genuine issues of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). If the moving party meets this initial burden, then the non-moving party must set forth specific facts showing that there is a genuine issue for trial in order to defeat the motion. Anderson, 477 U.S. at 247–48.

Petitioners challenge the ATF's denial of their license applications pursuant to 18 U.S.C. § 923(f). A licensee may challenge an ATF revocation by filing a petition for review with the appropriate federal district court. The GCA provides that review of a revocation decision is de novo. 18 U.S.C. § 923(f)(3). Under the de novo standard of review for a decision of the ATF, the district court may give the agency's finding and decision such weight as it believes they deserve, but need not accord any particular deference to those findings. Gilbert v. Bangs, 813 F. Supp. 2d 669, 672–73 (D.Md. 2011) (internal quotation marks omitted). In other words, the decision under review "is not necessarily clothed with any presumption of correctness or other advantage." Stein's, Inc. v. Blumenthal, 649 F.2d 463, 466–67 (7th Cir. 1980).

Although the district court's review must be de novo, it is "not required to hold an evidentiary hearing and may enter judgment solely based upon the administrative record." Arwady Hand Trucks Sales, Inc. v. Vander Werf, 507 F. Supp. 2d 754, 758 (S.D. Tex. 2007); see also Stein's, 649 F.2d at 466–67. The district court may consider any evidence submitted by the parties to the proceeding whether or not such evidence was considered at the administrative hearing. The district court is afforded discretion to receive evidence additional to that contained in the administrative record "when some good reason to do so either appears in the

administrative record or is presented by the party petitioning for judicial review." Shawano Gun & Loan, LLC v. Hughes, 650 F.3d 1070, 1076 (7th Cir. 2011).

Although the motion before the Court is styled as a motion for summary judgment, the nature of this action, and the federal laws implicated by the agency decision being challenged, require the Court to treat this motion differently than traditional dispositive motions brought pursuant to Rule 56 of the Federal Rules of Civil Procedure. Taylor v. Hughes, No. 1:12–CV–138, 2012 WL 7620316 (M.D. Pa. Dec. 27, 2012). There is a certain tension between the Court's obligation under the statute to perform a de novo review to determine whether the ATF decision was "authorized" and the Court's corresponding obligation under Rule 56 to view the facts in the light most favorable to the non-movant. 18 U.S.C. § 923(f)(3); Fed. R. Civ. P. 56; see also Sudyam v. U.S. Bureau of Alcohol, Tobacco, Firearms, and Explosives, 847 F. Supp. 2d 146, 156 (D.Me. 2012). Noting that § 923(f)(3) permits the district court to enter judgment on the basis of the administrative record when no substantial reason to receive additional evidence is present, courts have developed a practice "to grant judgment summarily when the material facts developed at the administrative hearing, which the court also concludes justify nonrenewal are not substantially drawn into question by the party petitioning for review." Stein's, 649 F.2d at 468 n. 7. Therefore, the ATF's "decision may be upheld when the trial court concludes in its own judgment that the evidence supporting the decision is substantial." Id. at 467.

Furthermore, the court in Stein's recognized that under the traditional summary judgment standard, "fact finding is inappropriate and all reasonable inferences must be drawn in favor of the party opposing the motion." Id. at 468 n. 7. In contrast, § 923(f)(3) authorizes the court to hear any evidence it wishes and make findings of fact, even without the benefit of conducting an evidentiary hearing. Id. at 466. Thus, while the court's decision may be "summary" in nature as

7

a matter of form, procedurally the Court may issue a decision even if material issues of fact exist, based upon its evaluation of the record and any additional evidence it has received. Taylor, 2012 WL 7620316, at *8. This is so because the legal standard requires only that there has been evidence of even a single violation committed willfully, and if there are undisputed facts that establish a willful violation then summary judgment is authorized. See Am. Arms Int'l v. Herbert, 563 F.3d 78, 86 (4th Cir. 2009)

In conducting a de novo review of ATF's decision, the question is whether ATF was authorized to deny Petitioners' applications for licenses. In order to uphold ATF's decision, a district court must be satisfied that ATF appropriately found that (1) the licensee violated one or more provisions of the GCA, and (2) the licensee willfully committed the violation. 27 C.F.R. § 478.73. A licensee's violation is willful "where the licensee knew of his legal obligation and purposefully disregarded or was plainly indifferent to the requirements." In re Taylor, 548 F. App'x 822, 824 (3d Cir. 2013) (citing Borchardt Rifle Corp. v. Cook, 684 F.3d 1037, 1042 n.9 (10th Cir. 2012)). Willfulness is synonymous with "plain indifference" to the legal requirements imposed by federal firearms laws. Vineland Fireworks Co. v. ATF, 544 F.3d 509, 517–18, n.16 (3d Cir. 2008).

### III. Discussion

Respondents have moved for summary judgment contending that ATF was authorized to deny Petitioners' applications based on Petitioner's willful violations of the GCA because "a single willful violation of the [GCA] by an applicant authorizes ATF to deny an application for a License or renewal of a License." (ECF 13, Resp'ts' Mot. for Summ. J. at 1–3) (citing 18 U.S.C. § 923(d)). In opposition, Petitioners argue that: (1) ATF is collaterally estopped from finding Petitioner Mrs. Kelerchian a co-conspirator because no charges were brought when Mr.

8

Kelerchian was charged; (2) the five-year statute of limitations in 28 U.S.C. § 2462 bars consideration of any acts by Petitioners under the previous license; (3) under 18 U.S.C. § 923(f)(4), ATF's denial of their applications is legally barred both because it is beyond a statute of limitations and because it is premature; (4) ATF deprived Petitioners of their constitutional rights to due process and equal protection of the law; (5) the facts presented and relied on by the ATF cannot establish willful violations of the GCA by Petitioners. (ECF 25, Petitioner's Brief in Opposition to Defendants' Motion for Summary Judgment).

### A. Collateral Estoppel

Collateral estoppel bars the subsequent relitigation of the same fact or same issue between the same parties or their privies where that fact or issue was necessarily adjudicated in a former suit and the same fact or issue is presented in a subsequent action. It applies where the causes of action are not the same, but the same fact or question is again put in issue in a subsequent suit between the same parties.

Petitioners' argument that ATF is estopped from denying the license on the basis that Mrs. Kelerchian was a co-conspirator to her husband's violations need not be analyzed because the basis for ATF's denial was that Mrs. Kelerchian aided and abetted her husband in the gun-related crimes. These are two different issues. Assuming arguendo, ATF would be estopped from finding that Mrs. Kelerchian was a co-conspirator, this would not stop ATF from proving she was an aider and abettor in the violations. Petitioners further argue that neither the statute, nor the regulations, provide a mechanism for ATF to issue a notice of denial and then subsequently change it with a superseding notice. (Pet'rs' Opp'n at 17–18). However, there are cases in which the court has accepted ATF's superseding notice as a valid revocation of a person's license. The court in Simpson v. Lynch, 2016 WL 1660842 (M.D. Pa. 2016), focused

on ATF's Superseding Notice of Revocation to determine whether ATF was authorized to revoke the license with no mention of any statute or regulation prohibiting ATF from using this type of revision. Thus, this does not seem to be an uncommon action by ATF in determinations on license applications.

Accordingly, the Court finds no basis for a collateral estoppel argument in this case.

### B.     28 U.S.C. § 2462—Statute of Limitations

Petitioners' contend that the ATF improperly relied on the alleged violations occurring from 2008 through January, 2010 in denying Petitioners' applications in 2016 because of a five year statute of limitations contained in 28 U.S.C. § 2462. (Pet'ts' Opp'n at 21). 28 U.S.C. § 2462 provides in full:

> Except as otherwise provided by Act of Congress, an action, suit or proceeding for the enforcement of any civil fine, penalty, or forfeiture, pecuniary or otherwise, shall not be entertained unless commenced within five years from the date when the claim first accrued if, within the same period, the offender or the property is found within the United States in order that proper service may be made thereon.

Furthermore, Petitioners' argue that ATF implemented the proceedings against Petitioner ASI, rather than ASI implementing the proceedings against the Government. After ASI applied for the renewal of its licenses, ATF granted letters of authorization for ASI to continue business. Subsequently, over two years later ATF constructively revoked ASI's licenses. (Pet'ts' Opp'n at at 22).

However, Petitioners provide no authority that persuades this Court that this limitation statute would apply in this case and this Court finds no authority that would substantiate Petitioners' argument. Moreover, Respondents cites several different cases that directly counter Petitioners' argument that this statute of limitations applies here. See, e.g., Barany v. Van Haelst, No. CV–09–253–RMP, 2010 WL 5071053 at *8 (E.D.Wash. Dec. 6, 2010), aff'd, 459 F.

10

App'x 587, 588 (9th Cir. 2011) (ATF's denial of an application for a License, or the renewal of one, is not an "an action, suit or proceeding for the enforcement of any civil fine, penalty, or forfeiture" to which the provision applies in the first instance); see also Lortz v. Gilbert, 451 Fed. Appx. 503, 504 (6th Cir. 2011) (finding ATF's refusal to renew License not subject to § 2462; applicant, not ATF, commenced proceedings by filing its renewal application, and denial of a federal firearms license is not an action to enforce a penalty).

The court in Gilbert also held that ATF's action in denying a License application was not an action, suit or proceeding for the enforcement of any civil fine, penalty, or forfeiture, but "part of ATF's duty to protect the public by screening applicants whose conduct may pose a safety risk." 813 F. Supp. 2d at 675. The court concluded that interpreting ATF denials of license applications as remedial measures rather than penalties is correct because it upholds ATF's discretion, granted by the Attorney General, to make such determinations based on all the evidence before it. Id. This Court cannot ignore overwhelming authority holding that the five year statute of limitations in 28 U.S.C. § 2462 would not apply to ATF's decision to deny the License applications in this case.

Accordingly, the Court declines to interpret 28 U.S.C. § 2462 as barring ATF from considering Petitioners' alleged violations that occurred more than five years prior to ATF's decision to deny Petitioners' applications.

C.     **18 U.S.C. § 923(f)(4)—Criminal Prosecution**

Petitioners argue that 18 U.S.C. § 923(f)(4) bars ATF from denying ASI's applications to renew its licenses because (1) ATF instituted proceedings against ASI's Licenses more than one year after the 2013 indictment against Mr. Kelerchian and (2) Mr. Kelerchian has not exhausted

11

all of his appeals so there is not currently a final determination in his case. (Pet'rs' Opp'n at 18–19). 18 U.S.C. § 923(f)(4) provides in full:

> If criminal proceedings are instituted against a licensee alleging any violation of this chapter or of rules or regulations prescribed under this chapter, and the licensee is acquitted of such charges, or such proceedings are terminated, other than upon motion of the Government before trial upon such charges, the Attorney General shall be absolutely barred from denying or revoking any license granted under this chapter where such denial or revocation is based in whole or in part on the facts which form the basis of such criminal charges. No proceedings for the revocation of a license shall be instituted by the Attorney General more than one year after the filing of the indictment or information.

Neither side presents any case law on this issue nor is the Court able to find any cases that would provide assistance in its decision. Therefore, the Court will look to the plain language of the statute. The statute specifically states that criminal proceedings must be instituted against the licensee for this provision to be useful. In the present case, Petitioner was not charged criminally with any violation of the GCA. Mr. Kelerchian exclusively was charged with violations. Additionally, the statute requires that the proceedings be instituted by the Attorney General for the purpose of revoking a license. Here, the ATF is not instituting a proceeding as Petitioners' filed the applications for the licenses, and the ATF is not revoking the licenses, it is denying Petitioners' applications for a license and for renewal of a license.

The possibility that Mr. Kelerchian's appeal is heard and his conviction is overturned has no relevance in the present case because the licenses at issue were for ASI and Mrs. Kelerchian. Moreover, Mr. Kelerchian was specifically removed as a "responsible person" from the ASI license before Petitioners' applied for renewal. Although Mr. Kelerchian's actions may be tethered to Petitioners' alleged GCA violations, Respondents have made clear that there was enough undisputed evidence that even if Mr. Kelerchian's conviction is overturned, there will remain substantial evidence that Petitioners willfully violated the GCA.

Accordingly, the Court declines to follow Petitioners' interpretation. The plain language of the statute controls. Petitioner has no claims based on the criminal proceedings.

D. **Denial of Constitutional Rights**

Petitioners' argue that the ATF hearing was deficient in providing due process and that the Government failed to provide a pre or post-deprivation hearing in violation of Due Process. (Pet'rs' Opp'n at 22–25). Along with this due process argument, Petitioners also argue that they were denied the opportunity to prepare a defense for the hearing because the demand for discovery was never answered.

As noted by Respondents, courts have found that ATF's administrative hearing process comports with the requirements of due process. See DiMartino v. Buckles, 129 F. Supp. 2d 824 (D. Md. 2001), aff'd, 19 F. App'x 114 (4th Cir. 2001) (rejecting petitioners' contention they were denied due process rights because, among other reasons, the ATF combined the investigatory and adjudicatory roles in one entity, finding argument foreclosed by Supreme Court jurisprudence); Weaver v. Harris, 486 F. App'x 503, 506 (5th Cir. 2012) (acknowledging that the petitioner had provided "generalized examples of additional procedures he wishes were in place during his revocation proceedings, [but] fails to provide any persuasive reason as to why those procedures are mandated by the Due Process Clause.").

ATF's notice process and hearing procedures comport with due process. Petitioners received notice of the violations, had an opportunity to be heard, had an opportunity to present evidence on their behalf, and to challenge the government's evidence, prior to ATF revoking the licenses. Petitioners also exercised their right to seek de novo review in federal court. Courts have found that these procedural protections satisfy due process. See Sovereign Guns, Inc. v. U.S. Dep't of Justice, No. 5:16-CV-182, 2016 U.S. Dist. LEXIS 170394, 2016 WL 7187316, at

*5 (E.D. N.C. Dec. 9, 2016) ("[I]n light of a licensee's opportunity to present evidence, cross-examine witnesses, and seek de novo judicial review, it is readily apparent that the GCA offers licensees adequate opportunity to demonstrate any deficiencies or inaccuracies [in] the government's evidence."); see also Shaffer v. Holder, No. 1:09-0030, 2010 U.S. Dist. LEXIS 31415 (M.D. Tenn. Mar. 30, 2010) (due process rights not violated where ATF did not apply rules of discovery, did not provide the petitioner with copies of exhibits prior to hearing, and did not apply the APA's standards). The Court reaches the same finding here.

Petitioners also contend that Respondents violated their right to equal protection under the Fifth Amendment by treating them differently from other similarly situated federal firearms licensees. Petitioners' argument is based on the assertion that ATF is inconsistent in its inspection and enforcement activities. Specifically, with respect to another licensee, petitioner claims that ATF allowed him to continue to operate while having engaged in the same conduct that ATF alleges precludes Mrs. Kelerchian from being granted a license, and that forms the basis for the revocation of ASI's licenses. Thus, Petitioners are making a class of one argument, which the Supreme Court has found may be a cognizable equal protection claim in some instances. See Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (per curiam) (finding an equal protection claim brought by an individual where it was alleged that the claimant "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."); see also Overly v. Garman, 599 Fed.Appx. 42 (3d Cir. 2015) (holding that in order to establish a class of one equal protection claim a plaintiff must show that (1) the defendants treated him differently than others similarly situated, (2) the defendants did so intentionally, and (3) there was no rational basis for the difference in treatment).

14

The Third Circuit addressed a similar argument in In re Taylor, 548 Fed.Appx. 822 (3d Cir. 2013). In that case petitioner requested files on every FFL holder whose license had been revoked by ATF, as well as files on FFL holders who violated the GCA but whose licenses had not been revoked, in order to analyze ATF's internal policies and treatment of other licensees. The Court held that there is no basis to require a district court "to undertake an analysis of ATF's policies and the application of those policies to other [License] holders when the court has concluded that the statutory requirements for revocation have been met." Id. at 825. Furthermore, whether ATF did or did not investigate any other License holder with respect to any allegedly similar transaction is not relevant to the Court's inquiry into whether Petitioners willfully violated the GCA, and to whether ATF was authorized to deny Petitioners' applications for licenses. Id. For the same reasons, this Court rejects Petitioners' unsupported argument.

### E. Evidence of Willful Violations

Petitioners argue that ATF cannot establish a "willful" violation of the GCA against Mrs. Kelerchian or ASI as required in denying or revoking an FFL. (Pet'rs' Opp'n at 34–58). However, Petitioners do not dispute the facts established in the administrative proceedings including the evidence presented in the criminal action against Mr. Kelerchian.

Under the GCA, anyone engaged in the business of importing, manufacturing or dealing in firearms needs a Federal firearms license. 18 U.S.C. § 923(d)(1). The Attorney General must approve any application for a License if the applicant meets the legal requirements.[3] Id. One requirement is that the applicant has not willfully violated a single provision of the GCA or regulations issued thereunder. 18 U.S.C. § 923(d)(1)(C). A violation of the GCA is willful "where the licensee knew of his legal obligation [under the GCA] and purposefully disregarded

---

[3] The Attorney General has delegated his licensing decisions to ATF. 28 C.F.R. § 0.130(a)(1).

or was plainly indifferent to the requirements." In re Taylor, 548 Fed. Appx. at 824. See also Borchardt Rifle Corp., 684 F.3d at 1041; Armalite, Inc. v. Lambert, 544 F.3d 644, 648 (6th Cir. 2008); RSM, Inc. v. Herbert, 466 F.3d 316, 321–22 (4th Cir. 2006); Article II Gun Shop, Inc. v. Gonzales, 441 F.3d 492, 497 (7th Cir. 2006); Willingham Sports, Inc. v. ATF, 415 F.3d 1274, 1277 (11th Cir. 2005); Perri v. ATF, 637 F.2d 1332, 1336 (9th Cir. 1981); Lewin v. Blumenthal, 590 F.2d 268, 269 (8th Cir. 1979).

Through its investigation, ATF found that Petitioners conspired, and aided and abetted a conspiracy, to violate 18 U.S.C. § 924(a)(1)(A) by causing Heckler & Koch to keep false records. Petitioners argue that the acts committed by Mr. Kelerchian were not within the scope of his employment and therefore cannot be attributed to ASI. Thus, ASI was not involved in a conspiracy in any "knowing capacity." Further, Mrs. Kelerchian was merely relaying the information that Mr. Kelerchian told her to provide to customers and did not share "the criminal intent of the principal." Both Petitioners were also not charged in the criminal action brought against Mr. Kelerchian. (Pet'rs' Opp'n at 39–50).

Title 18 U.S.C. § 2 makes punishable as a principal one who aids or abets another in the commission of a substantive offense. United States v. Greatwood, No. 98-10079 1999 U.S. App. LEXIS 14942, *3 (9th Cir. June 29, 1999); See also Harris News Agency, Inc. v. Bowers, 809 F.3d 411, 413–414 (8th Cir. 2015). Mrs. Kelerchian served as ASI's Vice President and was a responsible person on ASI's Licenses since 2002. She was mainly responsible for the billing, email communications, and payments for the firearms. (Rec. at 3052–228). One of Mr. Kelerchian's co-conspirators, Chief Kumstar, testified that Mr. and Mrs. Kelerchian were basically interchangeable when he communicated with ASI. (Rec. at 0888–90). The undisputed evidence obtained by ATF shows that Mrs. Kelerchian was directly involved in the illegal

16

purchases under the GCA. She explained to the conspirators what paperwork was required to obtain the guns illegally, how to prepare the false documentation, and where to send it; she pointed out a misspelled word on one of the false letters; she provided Chief Kumstar with a prepaid FedEx label to send the fraudulent paperwork; she sent out invoices from ASI to the purchasers of the machineguns; she collected money from various sources other than the Sheriff's Department for guns purportedly being purchased by the Sheriff's Department, deposited those funds into ASI's account, and paid H&K or its agents with ASI funds for the illegally purchased guns; she sent Chief Kumstar pictures on how to cut up a machinegun. (Rec. at 3141–55, 3193, 3210, 3216, 3218, 3229–31). These are not the actions of someone doing what any effective employee would have done in the same situation, as Petitioners argue. Mrs. Kelerchian was directly involved and assisted in the purchase of these illegal firearms.

ATF also found that ASI illegally possessed five machineguns in violation of 18 U.S.C. § 922(o), and Mrs. Kelerchian aided and abetted that illegal possession. Petitioners argue that pursuant to 27 C.F.R. § 479.105(d), a licensee may possess a machine gun manufactured after May 18, 1986. The request for the transfer of these five firearms was sent to ATF with the proper documentation and ATF approved the transfers. In certain circumstances ATF has been known to allow samples to be purchased without demonstration letters. Mrs. Kelerchian was merely sending information to a customer and providing any necessary follow up response, Petitioners argue. (Pet'rs' Opp'n at 50–53).

The GCA provides, in relevant part: "(1) Except as provided in paragraph (2), it shall be unlawful for any person to transfer or possess a machinegun. (2) This subsection does not apply with respect to— (A) a transfer to or by, or possession by or under the authority of, the United States or any department or agency thereof or a State, or a department, agency, or political subdivision thereof." 18 U.S.C. § 922(o). During its investigation, ATF found that ASI acquired

17

machineguns by presenting to ATF fake letters in the name of the Sheriff's Department falsely requesting "demonstrations" of these machineguns in connection with their purchase for law enforcement purposes; the fake demonstration letters were merely a mechanism to get the weapons, which were only legal in the possession of law enforcement, into ASI's inventory. (Rec. at 3232–33). Mrs. Kelerchian was directly involved in obtaining the five machineguns for ASI. She explained to Mr. Kelerchian's co-conspirator Chief Kumstar the process for obtaining the machineguns by sending a demonstration letter to the ATF, and also updated Kumstar that more letters were needed.

Under 18 U.S.C. § 924(a)(1)(A), it is a crime to "knowingly make[] any false statement or representation with respect to the information required by [the GCA] to be kept in the records of a person licensed under this chapter." The statute does not require that the perpetrator transfer, receive, or possess the firearms that are the subject of the false statement or representation, or come into contact with those firearms in any way. The court in Mr. Kelerchian's criminal action analyzed this issue: even if the conspiracy had been only about the barrels, because they were imported into the country, as opposed to having been manufactured here, their sales were still restricted only to military or law enforcement agencies, and any attempt to deceive the federally licensed importer about the identity of the buyer violated § 924(a)(1)(A). Kelerchian, 2015 U.S. Dist. LEXIS 80336 at *4.

ATF denied the licenses after concluding, based on the undisputed evidence, that Petitioners had committed these violations willfully. A violation of the GCA is willful "where the licensee knew of his legal obligation [under the GCA] and purposefully disregarded or was plainly indifferent to the requirements." In re Taylor, 548 Fed. Appx. at 824.

Accordingly, the undisputed evidence supports the conclusion made by ATF that Petitioners violated both 18 U.S.C. § 924 and 922(o) willfully.

## IV. Conclusion

Following the Petitioners' response to the Government's Motion for Summary Judgment reviewed above, the Court noted that Petitioners requested this Court to suspend indefinitely its consideration of the Government's summary judgment motion, including the requests for discovery, until Petitioners could cross move for summary judgment. The Government is correct that there is no bar to Petitioners making a cross motion for summary judgment, but they did not do so. However, this is a question of form over substance. Petitioners filed a comprehensive response to the Government's Motion for Summary Judgment, which is the basis of the rulings in this foregoing Memorandum. There is no reason to delay any further. The Court notes also that even though this a de novo review, that if the Court had considered this issue on the administrative record, it would have also found that the Petition would have to be denied under applicable law. The Court repeats its prior rulings that no discovery is necessary under settled precedent.

For the foregoing reasons, Respondents' Motion for Summary Judgment (ECF 13) is **GRANTED** and the Petition for Judicial Review will be **DISMISSED**, with prejudice.

O:\CIVIL 17\17-mc-10 Armament Services v Yates\17mc10 Memorandum re MSJ.docx